1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| DELLA RICHMOND, ) | Case No. CV 14-4729-AS |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION** |
| ) | |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration,) | |
| ) | |
| Defendant. ) | |
| ) | |

**PROCEEDINGS**

On June 23, 2014, Plaintiff filed a Complaint seeking review of the denial of her applications for Disability Insurance Benefits and Supplemental Security Income. (Docket Entry No. 3). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 9-10). On November 12, 2014, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 12-13). The parties filed a Joint Position Statement ("Joint

Stip.") On March 30, 2015, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 19).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed June 24, 2014 (Docket Entry No. 7).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On November 16, 2010, Plaintiff, formerly employed as an in-home care provider (see AR 20, 142), filed applications for Disability Insurance Benefits and Social Security Income, alleging a disability since February 28, 2010. (See AR 107-19). On July 3, 2012, Plaintiff, who was not represented by counsel, appeared and testified before Administrative Law Judge ("ALJ") Robert Eisman. (See AR 26-57). Plaintiff's father, Jay Richmond, and vocational expert Howard Goldfarb also testified. (Id.). On August 3, 2012, the ALJ issued a decision denying Plaintiff's applications. (See AR 11-25). After determining that Plaintiff had severe impairments -- "chronic kidney disease, anemia and obesity" (AR 18)[1] --, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform sedentary work[3] with the

---

[1] The ALJ found that hypertension was a nonsevere impairment. (AR 18).

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[3] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary
(continued...)

2

following restrictions: standing and walking no more than two hours; sitting 6 hours in an 8-hour workday with normal breaks; no climbing ladders, ropes or scaffolds; no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching or crawling; and no frequent or concentrated exposure to hazardous machinery, unprotected heights or other high risk, hazardous or unsafe conditions. (Id.). The ALJ found that Plaintiff was capable of performing her past relevant work as a home attendant. (See AR 20). Alternatively, the ALJ found that, in addition to her past relevant work, Plaintiff was also able to perform other jobs existing in significant numbers in the national economy, such as a table worker, marker or jewelry preparer. (AR 21). Accordingly the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (See AR 22).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 9). The request was denied on April 17, 2014. (AR 1-3). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to (1) consider and make credibility findings regarding Plaintiff's testimony and the lay witness testimony of her father; and (2) consider Plaintiff's severe

---

[3] (...continued)
criteria are met." 20 C.F.R. § 404.1567(a).

impairment of obesity in the listing and RFC determination. (See Joint Stip. at 4).

## DISCUSSION

**A.  The ALJ Properly Assessed The Credibility of Plaintiff and Plaintiff's Father**

Plaintiff asserts that the ALJ failed to articulate legally sufficient reasons to find her testimony not credible and offered "no articulation why he rejects [her father's] testimony which do not allow for work activity." (Joint Stip. at 4-9).

An ALJ's assessment of a claimant's credibility is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not

produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Smolen, 80 F.3d at 1284. Absent affirmative evidence of malingering, however, the ALJ may only reject a plaintiff's testimony "by offering specific, clear and convincing reasons for doing so." Id. In assessing a claimant's alleged symptoms, an ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id. An ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties." Id.

Lay witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). However, an error in addressing lay witness testimony is harmless, if a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006);

Molina, 674 F.3d at 1122 (explaining that if an ALJ's failure to discuss testimony favorable to the claimant was "inconsequential to the ultimate nondisability determination in the context of the record as a whole" then the failure is harmless error).

Plaintiff provided the following testimony at the administrative hearing:

> Her last job was performing in-home care for her brother. She lives with her father and her 17-year old son. (See AR 30-33).
>
> She has kidney disease but has not started dialysis treatment. (AR 33-34). She is taking medication for blood pressure, and the itching on her face and stomach. (AR 34-35). She has blood work done every three weeks. She is unable to work due to pain ("real bad pain") (AR 35), in her lower back and leg. (AR 36).
>
> She has not been able to get an x-ray of her back as recommended by her primary doctor because her "medicare froze" and she had to wait to see her doctor. (AR 37). She is trying to find a new primary doctor. (AR 38). She was hospitalized for a blood transfusion at St. Francis hospital. (AR 37)
>
> She spends her day sleeping; the medication she takes makes her sleepy and feel weak. (AR 40-41). Her son helps her with household and personal chores like cooking, laundry, shopping, and housework. (AR 40-41). She tries to do pushups,

stretches, but cannot "do a lot of walking right now." (AR 42-43).

Plaintiff's father testified that Plaintiff was unable to keep up with what had to be done, "she was slow with it, and she was having problems while she was working" and had pain in her arms, legs and back. (AR 45). He also stated that Plaintiff seemed to "slow down in her thinking, and maneuvering around, or doing, understanding things." (AR 46). "I noticed a change in her," (AR 46), and that Plaintiff needed help with "[p]ersonal things like showers and bathing and stuff like that." (AR 47-48).

Plaintiff explained that she needed help with bathing because the pain her leg prevented her from making it into the shower. (AR 48).

After summarizing Plaintiff's testimony and the testimony of Plaintiff's father (see AR 19),[4] the ALJ wrote: "Notwithstanding the testimony, the objective medical record fails to substantiate debilitating impairments and symptoms." (AR 19). The ALJ noted that, "treatment records show largely conservative treatment for [Plaintiff's] kidney condition." (Id.). The ALJ then referenced Plaintiff's treatment records which reflected that Plaintiff's kidney disease remained at

---

[4] With respect to Plaintiff's testimony, the ALJ wrote: "The claimant reported severe kidney problems, low back pain, weakness, and medication induced drowsiness. She testified that her daily activities were markedly limited and that most daily chores were preformed by her son . . . Her father . . . also testified that the claimant had pain affecting her arms, legs and back, which precluded work activity. He also reported impaired thinking and understanding due to her symptoms. . . . He testified that the claimant required extensive help with activities including showering and bathing." (AR 19).

stage 4, despite two episodic revisions to stage 5 in 2011 (see AR 19, citing AR 198, 251), Plaintiff generally reported feeling "ok" with no complaints and largely unremarkable physical findings and no significant abnormalities. (AR 19).

In determining Plaintiff's RFC, the ALJ gave great weight to the consultative internal evaluation report prepared by Dr. Soheila Benrazavi who concluded that Plaintiff was limited to sedentary exertion. (AR 19-20; 225).

Although Plaintiff contends that the ALJ failed to articulate any reasons for rejecting the testimony of Plaintiff's father, the Court finds that, when read in context, the ALJ appears to have considered the testimony of both Plaintiff *and* her father in determining that their statements about the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent that such testimony was not supported by the objective medical evidence and the conservative treatment Plaintiff received. (AR 19-20). Moreover, The ALJ did not reject Plaintiff's subjective complaints testimony entirely. Rather, the ALJ accepted Plaintiff's complaints of weakness and somnolence and incorporated them into the sedentary RFC determination. (See AR 20).

Even if the ALJ failed to discredit the testimony of Plaintiff's father on the same grounds as the Plaintiff's testimony, any error in failing to comment on the statements made by Plaintiff's father is harmless because the ALJ would not have reached a different disability determination if the testimony had been considered. Stout v. Comm'r, 454 F.3d 1050, 1056 (9th Cir. 2006). Plaintiff's father's statements

essentially reiterated Plaintiff's subjective complaints, (compare AR 30-43, with AR 44-46), and did not offer any new evidence or insight to establish disability. Therefore, no reasonable ALJ would have reached a more favorable determination had the statements been properly addressed. Stout, supra, 454 F.3d at 1056; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (an ALJ's clear and convincing reasons for discounting a claimant's testimony are equally germane to reject similar testimony by a lay witness).

Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Lack of supporting objective medical evidence is a key consideration for the ALJ in evaluating credibility. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (in determining disability, an ALJ must evaluate a claimant's statements about the intensity, persistence and limiting effects of her symptoms "in relation to the objective medical evidence and other evidence"). Here, the ALJ's finding that the objective medical evidence did not support the testimony of Plaintiff and Plaintiff's father regarding Plaintiff's symptoms and functional limitations was supported by substantial evidence. As the ALJ noted, although there were signs of slow deterioration of Plaintiff's kidney condition, laboratory testing revealed that there were only two occasions on which Plaintiff's kidney functioning reached a stage five level, and that otherwise her "kidney condition remained stable at a stage 4 level." (See AR 19). On March 9, 2011, Dr. Soheila Benrazavi, the internal medicine consultative examiner, found that Plaintiff's physical and neurological examinations

were generally within normal limits. (See AR. 223-25). The ALJ noted that although Plaintiff complained of low back pain, Dr. Benrazavi's "examination of [Plaintiff's] lumbar spine was completely normal." (AR 19; see also AR 224). Based on Plaintiff's severe anemia and chronic kidney failure, Dr. Benrazavi determined that Plaintiff could do sedentary work with no other limitations. (See AR 225). The ALJ accepted Dr. Benrazavi's findings and rejected the opinion of a state agency physician who issued a report, dated May 20, 2011, finding that a less restrictive RFC of light work was appropriate. (See AR 227-31). Finally, an abdominal ultrasound on May 1, 2012, which included Petitioner's kidney, revealed no significant abnormalities. (See AR 256). Thus, the ALJ's finding that the objective medical evidence did not support the testimony of Plaintiff and Plaintiff's father regarding Plaintiff's functional limitations was supported by substantial evidence and was a clear and convincing reason to discredit the testimony.

The ALJ also found that the testimony given by Plaintiff and her father regarding Plaintiff's limitations was not supported by the "largely conservative" treatment Plaintiff received for her kidney condition. (See AR 19). As the ALJ noted, although a December 30, 2010 medical note stated that Plaintiff "will need access soon for dialysis" (see AR 203), there was no evidence in the record that Plaintiff's "kidney functioning had deteriorated to the extent that dialysis was prescribed and provided to [Plaintiff]." (See AR 19; see also AR 198, 251-52, no mention of dialysis in medical records after December 2010). Further, at the administrative hearing (nearly one and one-half years) later, Plaintiff confirmed that she had not received dialysis (see AR 34). (See AR 19). Although the record reveals that Plaintiff had a

blood transfusion on December 29, 2011 due to "severe anemia [that was] attributed largely to menorrhagia as well as [Plaintiff's] kidney disease," Plaintiff's treatment plan generally consisted of continuing with her present medication regimen. (See AR 198, 203-10, 251-52). Moreover, even after her December 2011 blood transfusion, Plaintiff reported that she felt okay and had no complaints. (See AR 198). Indeed, most of Plaintiff's nephrology treatment records "generally show[ed] that [she] felt 'ok' with no [new] complaints and reflect[ed] largely unremarkable physical findings," an indication that Plaintiff's kidney condition was being adequately treated and not the cause of any functional limitations. (See AR 19; see also AR 198, 203-10, 251-52).

Thus, the ALJ properly discredited the testimony of Plaintiff and Plaintiff's father regarding Plaintiff's symptoms and functional limitations because Plaintiff's medical appointments were generally routine follow-up appointments and her kidney condition was adequately treated with relatively conservative treatment. This was a clear and convincing reason to reject such testimony. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (conservative treatment can diminish a claimant's credibility regarding the severity of an impairment); see also Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling).

Because the ALJ provided clear and convincing reasons for his adverse credibility finding, the Court defers to the ALJ's credibility determination. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing.").

**B.    The ALJ Properly Considered Plaintiff's Obesity**

Plaintiff contends that although the ALJ found Plaintiff's obesity to be a severe impairment, he did not consider whether Plaintiff had a listing level impairment or whether the obesity had an impact on her RFC. (Joint Stip. at 13-15).

Generally, when there is evidence of obesity as an impairment, the ALJ must determine its effect upon the claimant's other impairments, ability to work, and general health. Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003); see also SSR 02-1p, 2002 WL 34686281, at *3-7 (Sept. 12, 2001) (requiring ALJ to consider effects of obesity throughout sequential evaluation process). An ALJ must "evaluate each case based on the information in the case record," as obesity may or may not increase the severity or functional limitations of other impairments. See SSR 02-1p, 2002 WL 34686281, at *6.

Here, the record shows that, although Plaintiff did not raise the issue of her weight, the ALJ nonetheless examined the record, acknowledged Plaintiff's obesity, and determined that it was a severe impairment. (See AR 18, 19). In addition, Plaintiff's treating physician, Dr. Samia Khwaja, noted Plaintiff's obesity, but did not opine that her obesity exacerbated her other impairments or caused any functional limitations that would exceed an RFC for sedentary work. (See AR 203-04, 205-06, 211). Rather, Dr. Khwaja noted Plaintiff's

weight and recommended that she lose weight, diet and/or exercise. (See AR 206, 212-14, 216-17). Moreover, Plaintiff did not present any testimony or other evidence indicating that her obesity impaired her ability to work. Because Plaintiff did not provide "any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis," the ALJ was not required to consider the effect of Plaintiff's obesity in combination with her other impairments. See Garcia v. Comm'r of Soc. Sec. Admin., 498 F. App'x 711, 712 (9th Cir. 2012); Burch v. Barnhart, 400 F.3d 676, 684 (9th Cir. 2005) (ALJ did not err in failing to consider obesity at step three because claimant did not point to any evidence in the record of any functional limitations due to obesity which would have impacted the ALJ's analysis, and only evidence relating to obesity were "notes from doctors who observed weight gain, indicated that [claimant] is obese, and recommended that she participate in a medically supervised weight loss program."); Burton v. Astrue, 310 F. App'x 960, 961 n.1 (9th Cir. 2009) (ALJ did not err in failing to consider adequately claimant's obesity when claimant does not specify how his obesity limits his functional capacity or how it exacerbates his currently existing condition).

Here, Dr. Benrazavi, the consultative examiner whose opinion the ALJ gave great weight to in assessing Plaintiff's RFC, was cognizant of Plaintiff's height and weight, as well as her other claimed impairments including her complaints of back pain, and nonetheless concluded that Plaintiff retained the functional capacity to perform work at a sedentary exertional level with no restrictions. (See AR 221-25); see Burch, 400 F.3d at 684; Garcia, 498 F. App'x at 712 (ALJ did not fail to

consider obesity when he recognized claimant's obesity as severe and relied on functional limits suggested by doctors who recognized it).

Because there is nothing in the record to indicate that Plaintiff's obesity, alone or in combination with other impairments, equaled a Listing or resulted in any greater limitations than those reflected in the RFC, the ALJ did not err in his consideration of Plaintiff's obesity.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 5, 2015.

>                     /s/
>             ALKA SAGAR
> UNITED STATES MAGISTRATE JUDGE